AYRES, Judge.
This is an action upon a fidelity bond in which plaintiff, Morley A. Hudson, seeks to recover of the defendant, Maryland Casualty Company, the sum of $10,-000.00 with legal interest thereon from judicial demand until paid, together with 12% of principal and interest as penalties and a reasonable attorney’s fee suggested at the sum of $2,500.00. The penalties and attorney’s fee are sought on a basis of defendant’s arbitrary and capricious refusal, without probable cause, to pay plaintiff’s claim. In addition, plaintiff claims expenses and an attorney’s fee in the further sum of $599.70 by reason of defendant’s refusal to properly admit certain facts in a discovery proceeding.
After trial, there was judgment in defendant’s favor rejecting"* plaintiff’s demands. From the judgment thus rendered and signed, plaintiff prosecutes this appeal.
The insuring clause of the bond sued upon recites:
“In consideration of an agreed premium, the MARYLAND CASUALTY COMPANY, a corporation of the State of Maryland, with its Home Office in the City of Baltimore, hereinafter called Underwriter, hereby agrees to indemnify
M. A. HUDSON — MANSFIELD, LA. *569 of hereinafter called Insured, in an amount not to exceed — -TEN THOUSAND—
Dollars ($10,000) against any loss of money or other property, real or personal, belonging to the Insured, or for which the Insured is legally liable, which the Insured shall sustain and discover as provided in Section 1, through any fraudulent or dishonest act or acts committed by SAMUEL O. McCAN, hereinafter called Employee, acting alone or in collusion with others, beginning with the 3rd day of NOVEMBER, 1967, Standard Time, at the address of the Insured above given, and ending at 12 o’clock night, Standard Time, as aforesaid, on the effective date of the cancellation of this bond.”
The section mentioned in the insuring clause with respect to the discovery period recites:
“Section 1. Loss is covered under this bond only (a) if sustained through any act or acts committed by the Employee while in the service of the Insured and while this bond is in force * * * and (b) if discovered prior to the expiration of twenty-four months from the cancellation of this bond. * * * ”
Plaintiff’s loss allegedly arises out of an employment contract entered into January 24, 1966, between plaintiff and Samuel O. McCan. The principal of the loss purportedly exceeds the coverage afforded by the bond. Defenses are, first, that the bond is null and void, having been issued through misrepresentations falsely made by McCan; second, that McCan was not an employee of Hudson; and, third, that Hudson sustained no loss.
With respect to the first of these defenses or contentions, to the effect that the bond is invalid as having been obtained through fraud, there is no evidence to support this position of the defendant other than an application supposedly made by McCan for the bond wherein he purportedly made misrepresentations. Pretermitting any discussion as to whether this purported application would, if admissible, be binding upon Hudson, not a party thereto and who knew nothing of its contents prior to the time he allegedly sustained the loss concerned in this action, it can only be concluded, inasmuch as a copy of the application was not attached to the bond or policy, that the application is inadmissible pursuant to and under the provisions of LSA-R.S. 22:618, subd. A, wherein it is recited:
“No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered. * *
Moreover, such matters as “Mansfield, La.” appearing on the bond following Hudson’s name as the insured are of no importance or consequence.
Nor do we find any merit in the second of defendant’s contentions, that Mc-Can was not an employee of Hudson. The relationship of employer and employee was created by the terms of the contract entered into by these parties. No substantial showing was made to the contrary.
Thus it appears appropriate to point out that the record discloses McCan, an experienced abstractor but without adequate funds, held options to purchase the Vande-gaer Abstract Company, an individual and sole proprietorship of Many, Louisiana, and the DeSoto Abstract Company, Inc., of Mansfield, Louisiana. Hudson had, or there were available to him, funds with which to make purchases of these abstract concerns. This he did in his own name and for his own account. Thereupon Hudson and McCan entered into a contract whereby Hudson employed McCan as manager with plenary and necessary authority to operate these businesses. For instance, the agreement contained these appropriate provisions, such as:
“Now, therefore, in order to accomplish their purposes, the parties *570 have agreed to be governed by the following :
“1. At such time as Hudson has been repaid the sum of $56,638.00, which he furnished to purchase the assets of Vandegaer Abstract Company, and $3,500.00, which he furnished to purchase the assets of DeSoto Abstract Company, Inc., and the sum of $16,000.00 to be paid on the chattel mortgage note given by McCan in connection with the purchase of the assets of DeSoto Abstract Company, Inc., has been fully paid, then Hudson agrees to convey to McCan a one-half (1/2) interest in each of the said abstract companies, (i. e., in Many and in Mansfield, regardless of the form of business organization under which they may be operating at that time).
* * * * * *
“3. The parties agree that, in addition to the return of the actual capital to Hudson, he shall be paid interest on the declining balance of principal at the same rate of interest which Hudson is required to pay, from time to time, to retire the bank loan which he made to obtain said funds.
“4. McCan shall be the manager of and devote his full time to the operation of the abstract companies at Many and Mansfield, and for his work he shall be paid a monthly salary of Six Hundred and no/100 ($600.00) Dollars, which sum may be paid out of either the Mansfield or the Many operation as may be most advantageous to the parties. He is authorized to employ and discharge personnel, receive, account for and disburse funds, and to do any and all other things necessary to manage the businesses, but he is not authorized to borrow any money for either operation or incur any unusual indebtedness.
“5. In addition to the said salary, McCan shall be entitled to 10^ per mile for the use of his own automobile in the actual conduct of the business of either or both of said abstract operations. Any use of his automobile by McCan in sales promotion or business development and improvement shall be borne by McCan.

“9. In the prudent operation of the said businesses the parties agree that at least the following insurance coverages should be maintained:

(f) Fidelity bond in the amount of $10,000 on Sam McCan and on any other employee who may subsequently begin handling the funds coming into either of said operations;
and the premiums thereon shall be paid as a part of the operating expenses of said businesses; * * *
******
“12. While, for reasons of public relations, both operations are to be operated by and to appear to be owned and controlled by McCan, in fact the Many operation is, for the time being, a sole proprietorship of Hudson, and the Mansfield operation is owned by a corporation, Mansfield Abstract Co., Inc., all of the issued and outstanding stock in which is owned by Hudson, and it is conceivable that the Many operation may, prior to the retirement of the indebtedness for its purchase, be converted to a corporate operation, it is understood between the parties that when the indebtedness for the purchase of both businesses has been fully paid, Hudson will convey to McCan, by proper written instruments if desired, an undivided one-half ((4) interest in both businesses *571 whether they then be sole proprie-torships or corporations. Whether Hudson’s ownership of or in said businesses shall ever be made public is reserved for later determination.”
That it was agreed by Hudson and Mc-Can that the latter would be held out to the public as the owner of the businesses did not alter the relationship of employer and employee as between them and as created by their contract.
The third defense, that Hudson sustained no loss or that the evidence was insufficient to establish such a loss, presents a more serious question. The principal items of loss consist, first, of a $5,000.00 check of the clerk of court of Sabine Parish, Louisiana, payable to Vandegaer Abstract Co., which was endorsed by McCan and deposited to his personal account in The Peoples State Bank, of Many, Louisiana; second, of the pledge to the Sabine State Bank & Trust Co., Many, Louisiana, of invoices of an account receivable of Vandegaer Abstract Company due by Boise Cascade Timber Products in the sum of $7,516.00 for which there was issued a bank money order for $6,683.43, payable to the District Director of Interna! Revenue, showing Sam McCan as remitter. Upon payment of the invoices a bank money order was issued December 5, 1967, for the difference, after allowing for interest and discount on the loan, of $326.82 payable to “Vandegaer Abstract.” This order was paid by the bank December 6, 1967, on the endorsements of Vandegaer Abstract Co. and of Sam McCan. The third loss consists of three checks of the “Vandegaer Agency,” one for $602.56, payable to Samuel O. “McCain,” another, for $256.80, payable jointly to Vandegaer Abstract Co., Inc., and Mansfield Abstract Co., successor by change of name of the DeSoto Abstract Company, Inc., and a third, for $325.35, payable to Vandegaer Abstract Co., Inc., all for a total of $1,184.71 which was deposited to the personal account of Sam McCan. These checks were given in payment of fire losses of the Vandegaer Abstract Company.
It may ordinarily suffice to show a loss through fraudulent or dishonest acts to establish that one’s funds received by another are credited without explanation to the other’s personal account. However, it would appear, under the facts and circumstances of this case, that additional proof should be made. Seemingly, from the evidence, it could be concluded that McCan used both the Vandegaer Abstract Company account and his personal account in connection with the business of the abstract companies. Therefore, inasmuch as McCan was authorized to pay the expenses of the operation of the abstract companies, proof that funds or portions thereof received by McCan in their operation were not expended for that purpose would tend to more definitely establish plaintiff’s loss and that such loss was sustained through acts committed by McCan.
It appears appropriate to point out that additional proof is most probably available. Apparently, the banks with which McCan and Vandegaer Abstract Company did business maintained records including Recordak films of all accounts including checks drawn and charged thereto. These records would tend to establish sources of the funds deposited, the purposes of withdrawals therefrom and to whom made. The contract between Hudson and McCan made ample provision for audits of all the appropriate accounts. An audit or audits would, it appears, make more certain the proof as to some or all of the items of the alleged losses with reference to which the evidence now seems to be obscure.
Finally, for consideration is plaintiff’s claim for damages in the nature of costs allegedly incurred by reason of defendant’s failure to admit certain facts requested in a motion or request for admission. This claim is based upon expenses and attorney’s fees incurred in the taking of testimony to establish the genuineness of certain docu- *572 merits which defendant failed to admit. In this motion, plaintiff requested:
“ * * * that the defendant, MARYLAND CASUALTY COMPANY, pursuant to the provisions of Article 1496 of the Louisiana Code of Civil Procedure, either admit or deny the truth of the matters set forth hereinafter and either admit or deny the genuineness of the documents which are attached hereto, to-wit:
1.
“That on August 25, 1967 Sam McCan negotiated a loan in the amount of $6,-683.43 from Sabine State Bank & Trust Company for his personal account; that upon completion of the loan transaction, and as the proceeds thereof, McCan was provided by said bank with a Bank Money Order payable to Director of Internal Revenue in the amount of $6,683.-43;
2.
“That Sam McCan assigned to Sabine State Bank & Trust Company, as security for said loan, invoices of Vandegaer Abstract Company to Boise Cascade Timber Products as follows:
Dated 5/2/67 for $2,772.00
Dated 7/3/67 for $4,744.00
3.
“That on December 5, 1967 the Sabine Bank & Trust Company received from Boise Cascade Timber Products a check in the amount of $7,516.00 in payment of the aforesaid assigned invoices;
4.
“That the Sabine State Bank & Trust Company applied the said check in the amount of $7,516.00 as follows:
(a) it retained the sum of $7,189.18 in full payment of the aforesaid note of Sam McCan, including principal, interest and discount ;
(b) it issued a Bank Money Order to Vandegaer Abstract Company in the amount of $326.82 and delivered the same to Sam McCan.
5.
“That on November 21, 1967 J. E. Wright, Clerk of Court, Sabine Parish, Louisiana, in part payment for work done for him by Vandegaer Abstract Company, issued his check Number 2268 to Vandegaer Abstract Company in the amount of $5,000.00;
6.
“That the aforesaid check of J. E. Wright, Clerk of Court (No. 2268; dated November 21, 1967 in the amount of $5,-000.00) was on that same date deposited by Sam McCan in his personal checking account in Peoples State Bank of Many;
7.
“That there are attached to this Request for Admissions photostatic copies of the following, the genuineness of which defendant is requested to admit or deny:
(a) Sight Draft No. SWP 3842 issued by Boise Cascade Timber Products to the order of Sabine State Bank & Trust Company in the amount of $7,516.00.
(b) Bank Money Order No. 14303 issued by Sabine State Bank & Trust Company on August 25, 1967 to the order of District Director of Internal Revenue, in the amount of $6,683.43.
(c) Bank Money Order No. 14715 issued by Sabine Bank & Trust Company *573 on December S, 1967 to the order of Vandegaer Abstract, in the amount of $326.82.
(d) Check No. 2268 of J. E. Wright, Clerk of Court, Sabine Parish, Louisiana, issued on November 21, 1967 to the order of Vandegaer Abstract Company in the amount of $5,000.-00.”
To each of the interrogatories or requests except the last, defendant, through its attorney of record, answered:
“For the lack of sufficient information, appearer is unable to admit the request set forth [in the appropriately numbered paragraph] of plaintiff’s Request for Admission of Facts.”
With respect to the last inquiry, as to an admission of the genuineness of the documents, defendant answered:
“For lack of sufficient information, ap-pearer denies the genuineness of the documents attached to plaintiff’s Request for Admission of Facts.”
Following the filing of defendant’s answer, plaintiff, pursuant to the provisions of LSA-C.C.P. Art. 1514, moved and prayed for an order requiring defendant to pay the reasonable expenses incurred in the making of proof of the matters of fact and in establishing the genuineness of the documents. The costs itemized by plaintiff, allegedly incurred in the taking of the depositions of the presidents of both banks in Many, Louisiana, as well as that of the clerk of court of Sabine Parish, aggregated the sum of $99.70, together with $500.00 claimed as a reasonable attorney’s fee.
From defendant’s answers, it appears obvious that the defendant failed to comply with the provisions of LSA-C.C.P. Art. 1496, requiring it to either admit or deny the truth of the matters concerning which inquiries were made. Neither did the defendant set forth in detail, as required by the statute, the reasons why those matters could not be truthfully admitted or denied. Defendant appeared to rely solely upon the answers by one of its attorneys to the effect that for lack of sufficient information it was unable to admit the request. The defendant nevertheless denied outright the genuineness of the documents.
From our review of the record, there appears to be no justification for the use of the phrase “for lack of sufficient information” in defendant’s answers to plaintiff’s request. From the proofs of loss theretofore furnished by plaintiff, from the facts available to defendant in its own investigation, and from copies of the documents served on defendant, it is most reasonable to conclude defendant was in possession of sufficient facts to enable it to make an appropriate answer or, at least, to explain why. A party is not to be excused or justified in his answer on a basis of insufficient information when the record clearly establishes the contrary. The defendant, even on trial of the case, produced no evidence warranting a different conclusion. The purpose in seeking to have the defendant admit the facts and the genuineness of the documents was one which has been held to be served through the provisions of LSA-C.C.P. Art. 1496. In Voisin v. Luke, 249 La. 796, 191 So.2d 503, 506 (1966), it was said, with reference to the function of this article:
“ * * * it is generally agreed its employment presupposes the requesting party knows the facts sought to be admitted and merely desires to ascertain and circumscribe the contested factual issues that are to be ultimately litigated. In other words, the purpose ‘is to require admission of matters which ought to be admitted, or which will not be disputed at the trial, so that the time, trouble and expense required to prove them may be avoided.’ Metropolitan Life Ins. Co. v. Carr, D.C., 169 F.Supp. 377. As otherwise stated, its purpose is to eliminate the necessity of proving uncon-troverted facts.”
*574 It was, however, pointed out, in again referring to this article, that it may not be applied to a controverted legal issue lying at the heart of a case.
The inquiries made and the documents whose genuineness was sought to be admitted were not controverted matters, for, as already noted, no effort was made, on trial of the case on its merits, to establish the documents were not genuine. We therefore conclude that plaintiff should not have been put unnecessarily in the position of having to establish, through the depositions taken, the truth of these matters and the genuineness of these documents.
However, we find no proof in the record of the costs incurred in the taking of these depositions. In brief counsel points out that the expenses to which Hudson was put in this connection are detailed in plaintiff’s motion. This does not constitute proof.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed that this cause be remanded to the Honorable, the First Judicial District Court in and for Caddo Parish, Louisiana, and ordered reopened for the introduction of any testimony by either plaintiff or defendant bearing upon, establishing or disproving any loss sustained by plaintiff under defendant’s bond, and the extent and amount thereof, as well as the costs or expenses incurred in the taking of the depositions of the presidents of the banks and of the clerk of court, and for the rendition of a judgment in accordance therewith and in accordance with law consistent with the views herein expressed.
The appellant is assessed with the cost of this appeal in this court. The assessment of all other costs is to await final judgment.
Reversed and remanded.